Bates v. Park.

---

### Sarah Ellen Bates et al. v. Lucinda Park.

1. QUESTIONS OF FACT—*Settled by a Decree.*—Where a controversy involves principally questions of fact and such questions have been properly settled by a decree, this court will not disturb the finding.

Memorandum.—Bill for foreclosure. Error to the Circuit Court of Richland County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding. Heard in this court at the February term, 1894, and affirmed. Opinion filed June 23, 1894.

The opinion of the court states the case.

JOHN LYNCH, JR., attorney for plaintiffs in error.

R. B. WITCHER, attorney for defendant in error.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

This was a suit to foreclose a mortgage, dated May 10, 1889, and recorded three days afterward, and made to secure the payment of one promissory note of even date with the mortgage, for the sum of $200, due two years after date, with interest thereon at the rate of eight per cent per annum. The note and mortgage were executed by Sarah Ellen Bates and her husband, David L. Bates, to Jasper I. Montray, and were assigned by him to McCauley & Montray on July 25, 1889, and by them to Lucinda Park, defendant in error, on December 31, 1889. The note and mortgage were in evidence on the hearing, and the execution of both of them by the Bateses was sufficiently proved.

The tract of land, consisting of forty acres, which was covered by the mortgage, was sold and conveyed on February 14, 1891, by Sarah Ellen Bates and her husband to Jane W. Morris, one of the plaintiffs in error. The land was conveyed, subject to the mortgage, for a consideration of $25, and whatever might be realized under a contemporaneous written agreement, whereby Jane W. Morris was authorized to resist the foreclosure of said mortgage on the ground of fraud, and was obligated to give Sarah Ellen Bates one half of the net proceeds of any reduction which might be obtained by resisting, defending or compromising.

There is no doubt that the note and mortgage were bought by Lucinda Park in good faith, and for a valuable consideration, and without notice of any defense thereto. It is contended now, however, that the note and mortgage were made without consideration, and that the execution of these instruments was procured by threats and fraudulent representations on the part of Jasper I. Montray.

The charge of fraud and threats rests solely on the testimony of the Bateses. It is claimed that a man named Robert Simpson, the father of Mrs. Bates, by some sort of adoption, legal or otherwise, gave to Mrs. Bates a short time before his death, $970 in cash, to be divided between herself and her sister, Mary Winder, in case of Simpson's death. The

money was buried in the ground until arrangements had been made by which Jasper I. Montray was to take and hold the money for them. Montray and his wife went after the money at night, and David L. Bates, by the light of a "lantern dimly burning," exhumed the precious deposit and confided it to the lawyer's keeping. Afterward, whenever the attorney was importuned for money, he displayed a copper cent, or gave some other evidence of his impecuniosity.

Finally he began to threaten the Bateses with the penitentiary. He said that it was necessary to cover up this money; that if the Simpsons found out what had been done, they would make trouble; that he was a lawyer and could get out of the difficulty, but that the Bateses were in danger of going to the penitentiary. Under such threats, it is said, the mortgage to Montray was made, to enable him to cover up the transaction and to keep the Bateses out of the penitentiary. As between the parties the mortgage was false and fraudulent, as the Bateses swear, and was to be delivered to them after the lapse of two or three weeks, and was not to be put on record under any circumstances. In this way the penitentiary was to be cheated of its due, and the wicked were to be allowed to run at large, waxing worse and worse and deceiving the unwary. This is a highly improbable story, to say the least, and the chancellor would have been justified in disbelieving it, even if Montray had not contradicted it. How would a note and mortgage for $200, which were to be destroyed after a brief existence of two or three weeks, enable Montray to cover up the $970, which had been transferred to his custody from a hole in the ground? Would the statute of limitations bar the curiosity and inquiries of the neighbors after the lapse of so brief a period?

The manner in which the Bateses testify discredits their testimony. Mary Ellen Bates swears that she has no recollection of signing the note, and David L. Bates swears positively that he did not sign it. On this subject, the latter says at one time, "I will swear it on a pile of bibles as high as

a man can stand," and at another time, "I will swear that forty times more." When this witness was asked if he and his wife were not living separate and apart at the time of her suit against Montray, he prevaricated shamefully, and then, after an adjournment for dinner, took the witness stand and swore that he and his wife were living separate and apart at that time, and explained his prevarication in the following language: "I saw very plainly what he (defendant in error's attorney) wanted when he began to ask me— what he was driving at—but I had not thought about what to say." This amounted to a confession that he was endeavoring to swear according to his interests, and that he would not commit himself before ascertaining what his interests were. These are but a few of the facts connected with this case which show the unreliability of the testimony of David L. Bates. Sarah Ellen Bates gave her testimony with less recklessness than did her husband. But the story was the same and its inherent improbability was sufficient to condemn it and to justify the court in rejecting it.

The evidence shows a full settlement between Mary Ellen Bates and Jasper I. Montray through a suit brought by the former against the latter, in which she recovered and collected a judgment for $96.

The evidence further shows that at the time when the note and mortgage were made, certain lots in the village of Dundas, called the Dundas property, were conveyed by McCauley & Montray to Mary Ellen Bates and her sister for the consideration of $300, which was made up of the note and mortgage for $200, and $100 in notes of the Simpson estate. Mrs. Bates occupied the Dundas property, and sold it, and received the proceeds of the sale, and is therefore estopped to set up fraud or to dispute the consideration of the note and mortgage. She seeks to avoid the effect of this estoppel by swearing that a prior deed had been made to her for the same property by Montray for $850, which was paid by his retaining that amount out of the $970 which had been put in his custody, and that he

afterward got possession of that deed, and that therefore the property was hers without the second deed, which could not, under the circumstances, have been given for the mortgage, as claimed by Montray in his testimony. But the evidence does not support this proposition, which is incredible in itself, and the court was justified in regarding it as an idle tale.

The questions involved are principally questions of fact, and these have been settled, and properly settled, by a decree in favor of the defendant in error.

The decree is affirmed.